1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  MICHAEL CHRISTOPHER JUNIEL,      )   Case No.: 1:20-cv-0421 JLT
                                      )
12            Plaintiff,              )   ORDER GRANTING PLAINTIFF'S APPEAL
                                      )   (DOC. 16) AND REMANDING THE ACTION
13        v.                          )   PURSUANT TO SENTENCE FOUR OF 42 U.S.C.
                                      )   § 405(g)
14  ANDREW SAUL,                      )
    Commissioner of Social Security,  )   ORDER DIRECTING ENTRY OF JUDGMENT IN
15                                    )   FAVOR OF MICHAEL JUNIEL, AND AGAINST
              Defendant.              )   DEFENDANT, THE COMMISSIONER OF
16  _____ )   SOCIAL SECURITY

17        Michael Juniel asserts he is entitled to a disability insurance benefits and supplemental security

18  income under Titles II and XVI of the Social Security Act.  Plaintiff argues the administrative law

19  judge erred in evaluating the medical record and his statements concerning the severity of his

20  symptoms.  For the reasons set forth below, the matter is **REMANDED** for further proceedings

21  pursuant to sentence four of 42 U.S.C. § 405(g).

22                           **BACKGROUND**

23        In January 2016, Plaintiff filed his applications for benefits, asserting disability due to mental

24  illness, bipolar disorder, depression, and ADHD.  (*See* Doc. 11-1 at 75-76.)  The Social Security

25  Administration denied the application at the initial level and upon reconsideration.  (*See id.* at 25)

26  Plaintiff requested an administrative hearing on the application and testified before an ALJ on

27  September 14, 2018.  (*Id.* at 25, 44.)  The ALJ found Plaintiff was not disabled and issued an order

28  denying benefits on November 26, 2018.  (*Id.* at 25-36.)  Plaintiff requested review by the Appeals

                                    1

1  Council, which denied the request on September 11, 2019.  (*Id.* at 11-13.)  Therefore, the ALJ's

2  determination became the final decision of the Commissioner of Social Security.

3  **STANDARD OF REVIEW**

4  District courts have a limited scope of judicial review for disability claims after a decision by

5  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

6  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

8  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

9  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

10  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).  Substantial evidence is "more than a mere

11  scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a

12  conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*,

13  305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider

14  both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*,

15  760 F.2d 993, 995 (9th Cir. 1985).

16  **DISABILITY BENEFITS**

17  To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

18  engage in substantial gainful activity due to a medically determinable physical or mental impairment

19  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

20  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

21  his physical or mental impairment or impairments are of such severity that he is not only

22  unable to do his previous work, but cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the
national economy, regardless of whether such work exists in the immediate area in

23  which he lives, or whether a specific job vacancy exists for him, or whether he would be
hired if he applied for work.

24

25  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

26  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

27  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

28  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

2

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ first determined Plaintiff did not engage in substantial evidence following the alleged onset date of November 1, 2015.  (Doc. 11-1 at 28.)  Second, the ALJ found Plaintiff's severe impairments included: "major depressive disorder, bipolar disorder and attention deficit hyperactivity disorder."  (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 28-29.)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could perform non-complex routine tasks; the claimant could not have public contact; the claimant could occasionally interact with coworkers, with no teamwork-related tasks; and the claimant could tolerate occasional changes to job routine and environment.

(*Id.* at 30.)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work."  (*Id.* at 34.)  At step five, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as laundry worker, dishwasher, and panel installer.  (*Id.* at 35.)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 36.)

**DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred in evaluating the medical evidence, including the opinion of his treating physicians.  (Doc. 16 at 9-13.)  Plaintiff also asserts the ALJ erred in evaluating the credibility of his subjective complaints.  (*Id.* at 13-15.)  On the other hand, the Commissioner asserts the "final decision … is supported by substantial evidence and free of reversible legal error."  (Doc. 13 at 14.)

1   Specifically, the Commissioner argues that "[t]he ALJ properly evaluated the opinion evidence" in the

2   record and Plaintiff's subjective complaints.  (*Id.* at 8, 12 [emphasis omitted].)

3   **A.      Evaluation of Plaintiff's Subjective Statements**

4          Plaintiff testified at an administrative hearing on September 14, 2018.  (Doc. 11-1 at 45.)  He

5   reported that he was in special education classes in high school and had an individual education plan.

6   (*Id.* at 49, 57-58.)  He said he "graduated with a certificate" and obtained "a CNA card."  (*Id.*)

7          He stated that he was diagnosed with bipolar disorder, and he had thoughts of self-harm,

8   difficulty with concentration, and felt uncomfortable around others.  (Doc. 11-1 at 56, 59-62.)  Plaintiff

9   reported he experienced mood swings and manic episodes that caused him to "feel sad or angry."  (*Id.*

10  at 62.) Plaintiff believed difficulties with concentration affected the way he focused, did activities, and

11  "the way [he would] talk to people."  (*Id.* at 61.)

12         Plaintiff reported that he lived in an apartment by himself, but his mother was paid by the state

13  to provide in-home supportive services.  (Doc. 11-1 at 49, 54.)  Plaintiff explained that his mother did

14  his grocery shopping, though he went with her "probably once a month," and she took care of chores in

15  his apartment, including laundry, making dinner, and doing the dishes.  (*Id.* at 54-55, 60-61.)  He said

16  his mother also prepared his medication and reminded Plaintiff to take it.  (*Id.* at 61.)  Plaintiff stated he

17  had a driver's license, but his mother drove him to doctor appointments.  (*Id.* at 55.)

18         Plaintiff said he did not do activities in the community— such as attending movies or going to

19  the mall—and had not done so for about five or six years.  (Doc. 11-1 at 56.)  He testified he did not

20  feel "comfortable around others" and would "overthink[] stuff" about other people.  (*Id.*)  Plaintiff

21  clarified that being "around a lot of people" made him uncomfortable. (*Id.* at 57.)  He reported he may

22  walk to visit a friend who lived "in the next apartment over."  (*Id.* at 56.)  Plaintiff said he watched

23  movies when visiting with his friend but did not talk about them after and would "just go home."  (*Id.* at

24  56-57.)

25         Plaintiff reported he worked for two "behavioral health" facilities, where he looked over

26  residents.  (*Id.* at 49-50.)  Plaintiff said his position could be classified as a "nurse assistant," and his

27  duties included making "sure no one [went] AWOL," trying "to make sure fights didn't break out," and

28  providing water to residents.  (*Id.* at 50-52.)  He stated he sometimes had difficulty understanding the

4

work and "would get in trouble, get written up, sometimes sent home." (*Id.* at 58-59.)  Plaintiff said he was sent home "about four times" from work. (*Id.* at 59.)

> 1.    Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting a claimant's subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403).  Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  Social Security Ruling[1] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

      2.      The ALJ's analysis of Plaintiff's statements

      Addressing Plaintiff's statements regarding his impairments and the severity of his symptoms, the ALJ summarized the hearing testimony and stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. …

> Despite the claimant's allegations of severe psychological symptoms, the claimant's medical records discuss psychological symptoms that are at most moderate, and well-controlled with medication. During a January 2016 medication management and psychotherapy appointment, the claimant complained of anxious/fearful thoughts, depressed mood, insomnia, paranoia, and restlessness. (Ex. B11F/30). The claimant reported sleeping only three hours daily. (Ex. B11F/30). The claimant was prescribed carbamazepine at 200 mg twice daily to treat his symptoms. (Ex. B11F/31). By March 2016, the claimant's carbamazepine had a drastic effect on his previously reported psychological symptoms. During another medication management with psychotherapy appointment, the claimant stated that he was now sleeping seven to eight hours daily and was calmer. (Ex. B11F/24). In April 2016, the claimant denied difficulty concentrating and stated he was able to pay attention better. (Ex. B11F/21). The claimant further indicated that if he missed a dose of his psychiatric medication, he would stay up all night. (Ex. B11F/21). The claimant reported being irritated by others (but without the "edge"). (Ex. B11F/21). Based on these complaints, the claimant was prescribed Strattera at 40 mg daily. (Ex. B11F/23). During a June 2016 medication management and psychotherapy visit, the claimant reported worsening sleep, multiple episodes of depression per week, and difficulty concentrating. (Ex. B11F/19). However, by July 2016, the claimant reported a stabilized and under control mood when taking his medication (Ex. B11F/16), indicating only a temporary worsening of psychiatric symptoms as reported during the claimant's June 2016 psychiatry appointment.

> Due to the claimant's consistent management of his psychiatric conditions with medication, the claimant's medical visit frequency reduced. In November 2016, though the claimant reported anxiety in crowded situations, this anxiety was not affecting his daily living, the claimant was able to sleep "fine," and the claimant's conditions were again noted as well-controlled with medication. (Ex. B11F/11). The claimant did not attend another psychiatry appointment until March 2017, where the claimant was advised to obtain a counselor, but was otherwise directed to continue with his medications as prescribed. (Ex. B11F/9-10). The claimant's following visit

6

was in September 2017, where the claimant reported a worsening in his depressive symptoms, continued anxiety in crowds, and inability to concentrate. (Ex. B11F/5). The claimant was started on Lithium at 300 mg twice daily to address these symptoms. (Ex. B11F/6). The claimant visited his mental health provider again in November 2017, but had stopped taking lithium due to an allergic reaction. (Ex. B1F/4). The claimant was thus prescribed Depakote at 250 mg twice daily, but his mental status was not discussed during this visit. (Ex. B11F/4).

The claimant's following psychiatry visit was in March 2018, where he reported depressive symptoms lasting approximately two hours a week, for up to three weeks. (Ex. B11F/1). The claimant also reported occasionally picking fights over the telephone, though the claimant did note that he was feeling more calm, with greater ability to control his anger, since starting Depakote. (Ex. B11F/1). The claimant's medical record documents just one psychotherapy visit, in January 2017 (*see* Ex. B9F), indicating a condition that is well-managed with only medication. The claimant's medical record contains no evidence of treatment for his psychiatric conditions after March 2018.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the evidence of record. The claimant's alleged severe psychiatric symptoms are inconsistent with the claimant's medical record evidencing good management of his psychiatric conditions with medication, with only occasional tweaks to his medication regimen, the claimant's infrequent psychiatric visits through the latter part of the period under adjudication, and the claimant's lack of treatment of his conditions with psychotherapy.

(Doc. 11-1 at 31-32.)

    a.    *Applicable standard*

    Plaintiff argues that "[t]he ALJ failed to offer a clear and convincing reason for discounting Plaintiff's subjective complaints." (Doc. 16 at 13, emphasis omitted.)  On the other hand, the Commissioner contends "[t]he clear and convincing standard does not apply to this case because the record shows evidence of malingering." (Doc. 19 at 12, citing AR 372, 374, 404 [Doc. 11-1 at 377, 381, 409].)  Specifically, the Commissioner observes that during a consultative examination, Dr. Michael Cohn "reported that Plaintiff 'did not appear to be genuine and truthful,' 'did not put his best effort forward during the examination' and there was 'evidence of exaggeration and manipulation.'" (*Id.*, citing AR 327, 374 [Doc. 11-1 at 332, 379].)

    Notably, as observed by the ALJ, "Dr. Cohn did not have the opportunity to examine the claimant's condition within the period under adjudication." (Doc. 11-1 at 34.)  Further, the ALJ did not mention the observations of Dr. Cohn related to Plaintiff's effort or credibility or rely upon these observations in her decision.  (*See id.* at 33-34.)  Despite the Commissioner's assertions, the ALJ did not identify the statements of Dr. Cohn as evidence of malingering, or make a specific finding that

Plaintiff malingered when addressing the credibility of his subjective complaints.  (*See generally* Doc. 11-1 at 30-32.)  The Court is unable to rely upon the evidence identified by the Commissioner to support a finding of malingering where such evidence was not relied upon by the ALJ.  *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (noting a reviewing court is "constrained to review the reasons the ALJ asserts").

Because the ALJ did not make an affirmative finding of malingering, the ALJ was required to identify clear and convincing reasons to reject Plaintiff's subjective complaints.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("Because the ALJ made no finding that Robbins was malingering, he was required to give clear and convincing reasons in support of his adverse credibility finding"); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) ("unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each" [citation omitted].)

### b.    Effectiveness of treatment

In evaluating a claimant's statements regarding the severity of his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c)(iv); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe treatment commensurate with the "supposedly excruciating pain" alleged.  Here, the ALJ found Plaintiff's "alleged severe psychiatric symptoms are inconsistent with the claimant's medical record evidencing good management of his psychiatric condition with medication, with only occasional tweaks to his medication regimen."  (Doc. 11-1 at 32.)

Plaintiff argues that though "the ALJ asserted that Plaintiff's symptoms were controlled with medications," the record shows "his reported symptoms persisted throughout the relevant period." (Doc. 16 at 14.)  Plaintiff asserts, "The ALJ failed to identify any evidence that medications lessened Plaintiff's irritability or improved his ability to cope with social interaction."  (*Id.* at 14-15.)

The Commissioner contends the ALJ "reasonably found that Plaintiff's condition was 'well-managed' with medication."  (Doc. 19 at 13.)  The Commissioner argues that "[t]reatment records showed that Plaintiff's impairments were 'well-controlled' on medication and he reported improved

symptoms." (*Id.*, citing AR 405, 409, 412, 435, 447, 467 [Doc. 11-1 at 410, 414, 417, 440, 452, and 472]).  In addition, the Commissioner notes "a clinician concluded that Plaintiff had 'mild/moderate' impairment" in January 2017.  (Doc. 19 at 13, citing AR 428 [Doc. 11-1 at 433].)  Therefore, the Commissioner contends the ALJ "reasonably found that Plaintiff's condition was 'well-managed' with medication." (Doc. 19 at 13.)  Notably, however, the evidence to which the Commissioner refers was not cited by the ALJ in her analysis of Plaintiff's subjective statements.  Because the Court is constrained to review only the reasoning asserted by the ALJ, the Court is unable to rely upon the evidence identified by the Commissioner in reviewing the ALJ's decision. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (finding error were the court affirmed the ALJ's decision "based on evidence that the ALJ did not discuss" related to an issue).

Evaluating Plaintiff's statements, the ALJ found the "medical records discuss psychological symptoms that are at most moderate, and well-controlled with medication." (Doc. 11-1 at 31.)  The ALJ observed that in January 2016, Plaintiff "complained of anxious/fearful thoughts, depressed mood, insomnia, paranoia, and restlessness," and he was prescribed carbamazepine.  (*Id.*, citing Ex. B11F/30, 31 [Doc. 11-1 at 488-89].)  The ALJ found the medication "had a drastic effect," because Plaintiff reported sleeping more, "denied difficulty concentrating," and "was calmer." (*Id.*, citing B11F/21, 24 [Doc. 11-1 at 479, 482].)  The ALJ noted Plaintiff continued "being irritated by others (but without the 'edge')" in April 2016.  (*Id.*, B11F/21 [Doc. 11-1 at 479].)  In addition, the ALJ observed that while Plaintiff reported worsening symptoms in June 2016, by the following month he "reported a stabilized and under control mood when taking his medication…, indicating only a temporary worsening of psychiatric symptoms as reported during the claimant's June 2016 psychiatry appointment." (*Id.*, citing Ex. B11F/16 [Doc. 11-1 at 474].)  Furthermore, the ALJ noted that in November 2016, Plaintiff "reported anxiety in crowded situations," but his conditions "were again noted as well-controlled with medication." (*Id.* citing Ex. B11F/11 [Doc. at 469].)  The ALJ observed Plaintiff was treated only a few times in 2017, during which time Plaintiff reported worsening depression and was prescribed Depakote. (*Id.* citing Ex. B11F/4, 11 [Doc. at 462, 469].)  The ALJ also noted that Plaintiff reported "feeling more calm, with greater ability to control his anger, since starting Depakote." (*Id.* at 32, citing Ex. B11F/1 [Doc. Doc. 11-1 at 459].)

1      Although Plaintiff contends the ALJ erred because she did not "identify any evidence that

2   medications … improved his ability to cope with social interaction" (Doc. 16 at 14-15), the ALJ

3   clearly acknowledged that Plaintiff reported "anxiety in crowded situations" in November 2016 and

4   "continued anxiety in crowds" in September 2017.  (*See* Doc. 11-1 at 31.)  Plaintiff fails to show this

5   limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was

6   not properly accounted for in his residual functional capacity, which indicated Plaintiff "could not

7   have public contact" and limited interaction with co-workers.  (*See id.* at 30.)

8      Furthermore, the record does not support Plaintiff's assertion that "the ALJ failed to identify

9   any evidence that medications lessened Plaintiff's irritability."  (*See* Doc. 19 at 13.)  To the contrary,

10  the evidence cited by the ALJ indicates Plaintiff felt "his mood ha[d] stabilized and [was] under

11  control" when he took his medication in July 2016.  (Doc. 11-1 at 474.)  Similarly, in the treatment

12  notes cited by the ALJ from November 2016, Dr. Bedi indicated Plaintiff's condition was

13  "[c]ontrolled well."  (*Id.* at 469.)  Although the medication changed in 2017, as the ALJ observed,

14  Plaintiff reported in March 2018 that "he has been feeling more calm since he has started the Depakote

15  and able to control his anger."  (*Id.* at 460.)  Thus, the ALJ identified evidence in the record to support

16  her conclusion that Plaintiff's condition was "well-controlled with medication."

17     Although Plaintiff contends the ALJ also erred because she did not "identify any evidence that

18  medications … improved his ability to cope with social interaction" (Doc. 16 at 14-15), the ALJ

19  acknowledged that Plaintiff reported "anxiety in crowded situations" in November 2016 and

20  "continued anxiety in crowds" in September 2017.  (*See* Doc. 11-1 at 31.)  Plaintiff fails to show this

21  limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was

22  not properly accounted for in his residual functional capacity, in which the ALJ indicated Plaintiff

23  "could not have public contact" and limited interaction with co-workers.  (*See id.* at 30.)

24     The ALJ carried the burden to identify medical records that supported her conclusion that

25  Plaintiff's symptoms were controlled by medication, and the efficacy of Plaintiff's treatment

26  constituted a clear and convincing reason for rejecting Plaintiff's subjective statements regarding the

27  severity of his impairments. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v); *Warre v. Comm'r of Soc. Sec.*

28  *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with

medication are not disabling for purposes of determining eligibility for [social security]").  Thus, this factor supports the ALJ's decision.

c. *Lack of treatment*

Pursuant to the Regulations, the ALJ may consider "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms." 20 C.F.R. § 404.1529(c)(v).  Thus, the Ninth Circuit determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding failure to seek treatment was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ determined Plaintiff's statements concerning the severity of his symptoms was inconsistent with his "infrequent visits through the latter period under adjudication, and the ... lack of treatment of his conditions with psychotherapy."  (Doc. 11-1 at 32.)  The ALJ observed that Plaintiff had fewer medical visits in 2016 and 2017, after reporting "a stabilized and under control mood when taking his medication" in July 2016.  (*Id.* at 31.)  The ALJ noted Plaintiff did not have appointments between November 2016 and March 2017, after which his next appointment was in September 2017. (*Id.*)  Similarly, Plaintiff had an appointment in November 2017, and his "following psychiatry visit was in March 2018." (*Id.* at 31-32.)

Plaintiff contends the ALJ erred in considering his lack of treatment, because the Ninth Circuit has "criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." (Doc. 16 at 15, quoting *Regennitter v. Com'r SSA*, 166 F. 3d 1294, 1299-1300 (9th Cir. 1999).)  According to Plaintiff, his "infrequent psychiatric visits do not suggest good control of his symptoms, but are in fact consistent with the findings from physicians that he lacked insight into his condition and displayed poor judgment."  (Doc. 16 at 15, citing AR 373-74, 383-84, 426 [Doc. 11-1 at 378-79, 388-89, 431].)  Thus, Plaintiff contends this was not a clear and convincing reason for rejecting his statements.  (*Id.* at 14-15.)

When the evidence suggests lack of mental health treatment is part of a claimant's mental health

11

condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude the level or frequency of treatment is inconsistent with the severity of the complaints. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). The ALJ noted that despite Plaintiff's reported "severe psychiatric symptoms," Plaintiff had "infrequent psychiatric visits" and a lack of treatment during the relevant period.  (Doc. 11-1 at 32.) Despite Plaintiff's assertions, there is no evidence that his failure to seek treatment must be attributed to an impairment during the relevant period.  Indeed, records cited by Plaintiff related to his judgment pre-date his alleged onset disability date, and do not contradict the ALJ's findings related to Plaintiff's treatment during the adjudicated period.  (*See* Doc. 11-1 at 378-79, 388-89.)  Thus, the lack of treatment supports the ALJ's decision to give less weight to his statements concerning the severity of his symptoms.

### 3.    Conclusion

The ALJ identified clear and convincing reasons to find Plaintiff's subjective complaints lacked credibility and set forth reasons that were "sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958.  Accordingly, Plaintiff fails to demonstrate the ALJ erred in evaluating his subjective statements regarding the severity of his symptoms.

## B.    Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether it a physician

1   contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion

2   of a treating or examining medical physician only by identifying a "clear and convincing" reason.

3   *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be

4   rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."

5   *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility

6   and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must

7   uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the

8   evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and

9   not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either

10   outcome, the court may not substitute its judgment for that of the ALJ").

11       Plaintiff asserts the ALJ erred in rejecting mental limitations identified by his treating

12   physicians, Drs. Bedi and Nanra.  (Doc. 16 at 9-13.)  Because the opinions were contradicted by state

13   agency medical consultants and consultative examiner (*see* Doc. 11-1 at 32-34), the ALJ was required

14   to identify specific and legitimate reasons for rejecting the opinion of Drs. Bedi and Nanra.  *See Lester*,

15   81 F.3d at 831.

16       1.       Opinions of Dr. Gurraj Bedi

17       Dr. Bedi began treating Plaintiff in July 2016, and noted Plaintiff was diagnosed with Bipolar

18   Disorder, unspecified; ADHD with hyperactivity; and major depressive episodes.  (Doc. 11-1 at 420.)

19   On July 21, 2016, Dr. Bedi wrote a letter in which he indicated Plaintiff's conditions were "controlled

20   on medications currently."  (*Id.* at 427.)  He opined Plaintiff was "very limited in his ability to perform

21   an occupation due to these disorders at this time, despite his medications."  (*Id.*)  Further, Dr. Bedi

22   indicated Plaintiff's "debilitation [was] permanent."  (*Id.*)

23       Dr. Bedi also completed an undated "Mental Impairment Questionnaire."  (Doc. 11-1 at 420.)

24   He noted Plaintiff's symptoms included depressed mood, hostility or irritability, difficulty thinking or

25   concentrating, easy distractibility, poor immediate memory, paranoia, appetite disturbances,

26   hyperactivity, psychomotor abnormalities, poverty of speech, and insomnia.  (*Id.* at 421.)  According to

27   Dr. Bedi, Plaintiff's most severe symptoms included "anger issues" and difficulties with attention and

28   concentration.  (*Id.* at 422.)  In addition, he noted Plaintiff had intellectual struggles and was in special

education "his entire school career." (*Id.*)  Dr. Bedi believed Plaintiff had episodes of decompensation

or deterioration, which caused withdrawal from a situation or experience an exacerbation of symptoms

and noted that Plaintiff "[b]ecomes confused and frustrated with new and unexpected situations." (*Id.*)

Dr. Bedi opined Plaintiff had "marked" limitations with understanding, remembering, and carrying out

both "one-to-two step instructions" and detailed instructions; accepting instructions; responding to

criticisms; and traveling to unfamiliar places or using public transportation. (*Id.* at 423.)  Dr. Bedi

indicated Plaintiff had "moderate-to-marked" limitations with performing activities within a schedule,

sustaining an ordinary routine without supervision, working in proximity of others without being

distracted by them, making simple work-related decisions, completing a workday without interruptions

from his symptoms, interacting appropriately with the public, getting alone with coworkers or peers,

maintaining socially appropriate behavior, responding to workplace changes, setting realistic goals, and

making plans independently.  (*Id.*)

a.    *The ALJ's evaluation of Dr. Bedi's opinions*

Addressing the medical evidence, the ALJ indicated the opinions of Dr. Bedi were given "little

weight." (Doc. 11-1 at 32-33.)  The ALJ explained the weight given as follows:

> I considered the opinions of Gurraj S. Bedi, D.O. at Exhibits B1F/8, B6F/1-4, and
> B12F/23, 29, 32-36, and assign them little weight. For example, Dr. Bedi's opinion
> that the claimant has marked limitations in carrying out instructions and maintaining
> concentration for extended periods is inconsistent with the claimant's testimony that
> he is able to perform a number of activities of daily living (Hearing Testimony; Ex.
> B3E). Dr. Bedi's opinion that the claimant has greater than moderate limitations with
> respect to social interactions is inconsistent with the evidence of record showing that
> the claimant was described as cooperative during his medical appointments (Ex.
> B1F/1; B4F/3; B9F/4), that the claimant has been noted to have a positive interactive
> attitude towards his parents (Ex. B9F/4), and the claimant's testimony that he regularly
> spends time with a friend of his who lives next door.
>
> With respect to Dr. Bedi's opinions that the claimant is "unable to provide for himself"
> and "very limited in his ability to perform an occupation," statements that a claimant is
> "disabled" or "unable to work" are not medical opinions but are administrative
> findings dispositive of a case, requiring familiarity with the regulations. Such issues
> are reserved to the Commissioner of Social Security, who cannot abdicate the statutory
> responsibility to determine the ultimate issue of disability. Opinions on issues reserved
> to the Commissioner can never be entitled to controlling weight, and they must be
> carefully considered to determine the extent to which they are supported by the record
> as a whole or contradicted by persuasive evidence. Social Security Regulation 20 CFR
> 404.1527(d) and 416.927(d) addresses medical source opinions on issues reserved to
> the Commissioner. "We will not give any special significance to the source of an
> opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and
> (d)(2) of this section, but we will consider opinions from medical sources on issues
> such as whether your impairment meets or equals the requirements of any impairment

1  in the Listings of Impairments in appendix 1 to this subpart." Issues reserved to the
2  Commissioner are administrative findings because they would direct the determination
   or decision of disability. I also note that Dr. Bedi only treated the claimant for a period
3  of less than one month and drafted his opinions in August and September 2016, and
   therefore he had the opportunity to examine the claimant for only a small fraction of
4  the period under adjudication. With respect to Dr. Bedi's opinion on the claimant's
   activities of daily living, he failed to specify the activities of daily living with which
5  the claimant is limited.

6  (Doc. 11-1 at 32-33.)  Plaintiff argues the ALJ failed to identify any "specific, legitimate reasons" to

7  the limitations identified by Dr. Bedi.  (Doc. 16 at 9, emphasis omitted.)

8              *b.      Issue reserved to the Commissioner*

9        A physician's opinion on the ultimate issue of disability is not entitled to controlling weight,

10 because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not

11 medical opinions" under the Regulations.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Rather, an ALJ "is

12 precluded from giving any special significance to the source; e.g., giving a treating source's opinion

13 controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of

14 disability. Social Security Ruling 96-5p, 1996 WL 374183 at *3 (July 2, 1996); *see also McLeod v.*

15 *Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the

16 Commissioner"); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a

17 claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the

18 Commissioner. It is therefore not accorded the weight of a medical opinion").

19        Significantly, only the statements from Dr. Bedi that Plaintiff was "very limited in his ability to

20 perform an occupation due to these disorders" and his "debilitation [was] permanent" may be rejected

21 as ultimate conclusions reserved for the Commissioner. This is not a specific, legitimate reason for

22 rejecting the mental limitations identified by Dr. Bedi.  As this Court previously explained, "*To be very

23 clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-

24 related limitations are two vastly different propositions that should not be conflated." *Neves v. Comm'r

25 of Social Security*, 2017 WL 1079754 at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original).

26             *c.      Treatment relationship*

27        In determining the weight to give medical opinion evidence, the ALJ may consider the nature

28 and extent of the treatment relationship. *See* 20 C.F.R. § 404.1527(c)(2); *see also Benton v. Barnhart*,

331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion); *Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant] was a specific and legitimate reason to assign little weight" to the treating physician's opinion).

The ALJ observed that Dr. Bedi treated him "for a period of less than one month" before offering some of his opinions related to Plaintiff's mental limitations.  (Doc. 11-1 at 32.)  Notably, however, the opinion of a treating physician may not be rejected simply due to a limited relationship. *See Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D. Cal. Mar. 7, 2017); *see also Cox v. Berryhill*, 2017 WL 714384, at *6-7 (E.D. Cal. Feb. 23, 2017) ("a treating relationship can be established so long as the treating visits are consistent with the type of treatment, and can be as infrequent as two times per year").  Indeed, if a limited treating relationship alone constituted a legitimate reason for rejecting an opinion from a physician, an opinion from an examining source would always be rejected because the relationship between a claimant and an examining physician is generally limited to a single examination. *See Grayson v. Astrue*, 2012 WL 4468406, at *5 (E.D. Cal. Sept. 25, 2012).  Thus, while a limited treating relationship may be a valid reason for not giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2021).  This factor alone cannot support the ALJ's decision to reject limitations identified by Dr. Bedi.

### d.  Level of activity

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the subjective complaints and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ indicated, "Dr. Bedi's opinion that the claimant has marked limitations in carrying out instructions and maintaining concentration for extended periods is inconsistent with the claimant's testimony that he is able to perform a number of activities of daily living."  (Doc. 11-1 at 33.)

Importantly, the ALJ did not identify the activities of daily living that she believed conflicted with the limitations identified by Dr. Bedi.  Plaintiff testified that his mother did his grocery shopping, though he went with her "probably once a month," and she took care of chores in his apartment, including laundry, making dinner, and doing the dishes.  (*Id.* at 54-55, 60-61.)  Furthermore, Plaintiff did not participate in activities in the community, such as attending movies or going to the mall, though he may watch movies while visiting a friend.  (*Id.* at 56-57.)  The ALJ noted Plaintiff also reported "he could prepare meals, pay bills, shop, and drive." (*Id.* at 29.)  However, the ALJ failed to explain how the limited activities Plaintiff identified were inconsistent with limitations identified by Dr. Bedi, including "marked" limitations with understanding, remembering, and carrying out both "one-to-two step instructions" and detailed instructions; accepting instructions; responding to criticisms; and traveling to unfamiliar places or using public transportation.  (*See id.* at 423.)  Moreover, the ALJ did not find Plaintiff engages in such activities on a sustained basis.

Finally, the ALJ fails to explain how Plaintiff's demeanor during his medical appointments, "positive interactive attitude towards his parents" and ability to visit with a friend are inconsistent with the social interaction limitations identified by Dr. Bedi, who indicated Plaintiff had "moderate to marked" limitations with interacting with the public, coworkers, and peers.  (*See* Doc. 11-1 at 423.)  Rather, the activities identified do not occur in public, and the ALJ again did not find Plaintiff engaged in such activities on a sustained basis.  Thus, the purported inconsistency does not support the ALJ's decision. *See Bernie B. v. Berryhill*, 2019 WL 1260624, at *4 (C.D. Cal. Mar. 19, 2019) ("that Plaintiff 'occasionally' sees a friend and could 'interact adequately' with the consultative examiners…does not adequately conflict with his reported limitations" and the identified activities were "consistent with Plaintiff being able to function one-on-one but having limitations in a group setting").

Because the ALJ failed to explain how Plaintiff's activities were inconsistent with the specific limitations identified, this factor does not support the ALJ's decision to give little weight to the opinion of Dr. Bedi.

## 2. Opinions of Dr. Jaspreet Nanra

Dr. Nanra completed a "General Assistance Medical Report" on March 7, 2018.  (Doc. 11-1 at 523.)  Dr. Nanra indicated Plaintiff was diagnosed with Bipolar Disorder and ADHD, and believed his

17

mental impairments "substantially reduce[d] his[] ability to engage in work or training" on a full-time basis. (*Id.*)  Dr. Nanra noted Plaintiff's limitations included being "unable to concentrate, forgetfulness, need[ing] constant reminders, [and] restlessness."  (*Id.*)

### a.      The ALJ's evaluation of Dr. Nanra's opinions

The ALJ indicated the opinion of Dr. Nanra in the "General Assistance Medical Report" was assigned "little weight." (Doc. 11-1 at 33.)  The ALJ explained the weight given as follows:

> Dr. Nanra's opinions regarding the claimant's complete inability to concentrate and need for constant reminds (sic) is inconsistent with the evidence of record showing that during a May 2016 consultative examination, the claimant was able to spell music forward, and the examiner noted that the claimant did not exhibit any lack of concentration while at the assessment, nor did he have to be redirected. (Ex. B4F/2, 3). While I do note that at times the claimant exhibits difficulty concentrating (*e.g.*, Ex. B1F/3), as shown by the medical evidence discussed in this decision, a sample of which is discussed in this paragraph, the claimant's inability to concentrate is transient and not constant.  Moreover, Dr. Nanra's opinion regarding the claimant's inability to work is an opinion reserved for the Commissioner, as discussed earlier in this decision.

(*Id.*)  Plaintiff asserts the ALJ did not identify "a legitimate basis for discounting Dr. Nanra's opinion." (Doc. 16 at 12.)

### b.      Issue reserved to the Commissioner

As discussed above, an opinion on the ultimate issue of disability is not entitled to controlling weight.  20 C.F.R. §§ 404.1527(e), 416.927(e); *Martinez*, 261 Fed. App'x at 35 ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner").  Thus, the ALJ did not err in rejecting the conclusions of Dr. Nanra related to Plaintiff's "inability to work." However, the ALJ was required to identify specific, legitimate reasons for rejecting mental limitations identified by Dr. Nanra.

### c.      Inconsistencies with the medical record

An ALJ may reject the opinions of a physician when they are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). To reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  The ALJ must "set[] out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

The ALJ indicated Dr. Nanra's opinion that Plaintiff was "unable to concentrate" was "inconsistent with the record showing that during a May 2016 consultative examination, the claimant was able to spell music forward."  (Doc. 11-1 at 33.)  In addition, the ALJ observed "the examiner noted that the claimant did not exhibit any lack of concentration while at the assessment."  (*Id.*)  However, the ALJ failed to acknowledge that Dr. Matthew, the consultative examiner, also found Plaintiff was unable to spell the word "music" backwards when testing his concentration.  (*Id.* at 408.)  Further, Dr. Matthew tested Plaintiff's memory and found he "was not able to do perform the five digit span backwards," and the "[t]here object recall was 2/3."  (*Id.*)  Thus, contrary to the ALJ's assertion, the consultative examiner noted Plaintiff had deficiencies with concentration and memory.  Importantly, an ALJ may not selectively review the evidence and rely upon only favorable entries to support her decision. *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "pick and choose ... using portions of evidence favorable to his position while ignoring other evidence").

Because the ALJ failed to acknowledge other test results from the consultative examination related to Plaintiff's concentration and memory—which may be consistent with Dr. Nanra's opinion that Plaintiff was "unable to concentrate" and exhibited "forgetfulness"—the purported inconsistency does not support the ALJ's decision to reject Dr. Nanra's opinion.

    3.    Conclusion

The ALJ failed to carry the burden to identify specific and legitimate reasons, supported by the record, to reject the mental limitations identified by Drs. Bedi and Nanra.  Consequently, the ALJ erred in evaluating the medical record and opinions related to Plaintiff's mental limitations.

**C.    Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or

explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the limitations identified by Drs. Bedi and Nanra. These limitations are related to the determination of Plaintiff's mental residual functional capacity, and the ultimate determination of whether Plaintiff can perform work in the national economy. Because the ALJ failed to resolve the conflicts in the medical record regarding mental Plaintiff's limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence and identify legally sufficient grounds to support the decision. *See Moisa*, 367 F.3d at 886.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical opinions and the decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the decision denying benefits (Doc. 16) is **GRANTED**;

2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Michael Christopher Juniel and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __June 8, 2021__          _____/s/ Jennifer L. Thurston
                                    CHIEF UNITED STATES MAGISTRATE JUDGE

20